UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JORDAN ELLIS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:18-cv-01086-JRS-TAB ) |
| HANCOCK COUNTY SHERIFF'S DEPARTMENT, HANCOCK COUNTY COUNCIL, HANCOCK COUNTY BOARD OF COMMISSIONERS, | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**Order on Defendant's Motion for Summary Judgment (ECF No. 22)**

Plaintiff Jordan Ellis brings claims against Defendants Hancock Sheriff's Department, Hancock County Council, and Hancock County Board of Commissioners for negligence and violations of 42 U.S.C. § 1983. (Compl., ECF No. 1.) Specifically, Ellis alleges that, while an inmate at Hancock County Jail, Defendants' negligence and chronic understaffing caused him to be assaulted by a fellow inmate. Defendants now move for summary judgment. (ECF No. 22.) For the following reasons, Defendants' Motion for Summary Judgment is **granted in part** and **denied in part**.

I. Background

In 2013, the Indiana Department of Corrections State Jail Inspector recommended a staffing analysis of the Hancock County Jail (the "Jail"). (Staffing Analysis, ECF No. 30-1 at 4.) The staffing analysis concluded that: "The overall lack of staffing [in

the Jail] creates a substantial risk of injury to the current staff and inmate population." (*Id.* at 7.) The analysis advised Hancock County that eleven full-time jail officer positions needed to be created because "there are not enough jail officers to adequately supervise inmates, initiate activities, or complete other duties that support the agencies mission" and the "[l]ack of jail officers often times results in staff not being in proximate locations to inmate housing areas to provide immediate response in emergency situations." (*Id.* at 19, 7.)

The analysis also concluded that two jail officers must be stationed in the control room, the central security of the jail, between the hours of 8:00 a.m. and 4:00 p.m. (*Id.* at 18.) Two officers were needed because the surveillance footage in the control room must be monitored at all times, and control room officers have other duties as well, including: coordinating inmate visitation, answering questions from the public concerning release and bail, checking in attorneys and clergy, opening and unlocking doors, booking inmates into the Jail, answering the phones, and monitoring fire and smoke detection equipment and radio transmission. (*Id.* at 15; Burkhart Dep. 26:7-15, ECF No. 30-2.)

The findings in the staffing analysis were presented to Hancock County and the Sheriff's Department. (Shepherd Dep. 14:16—15:17, ECF No. 30-3; Burkhart Dep. 19:4-9, ECF No. 30-2.) Every year since 2013, the Sheriff has requested additional funding from Hancock County in order to hire more jail officers. (Shepherd Dep. 15:7—16:13, ECF No. 30-3.) However, only three additional jail officer positions have been created since 2013. (Shepherd Dep. 16:7-16, ECF No. 30-3; Burkhart Dep.

2

21:16-24, ECF No. 30-2.) Further, the control room has never been staffed with more than one officer at a time. (Shepherd Dep. 59:6-19, ECF No. 30-3; Burkhart Dep. 26:1—27:3, ECF No. 30-2.)

In May 2013, Ellis was arrested in Hancock County on burglary charges. (Ellis Dep. 15:9-16:16, ECF No. 22-1.) Ellis told the police that he committed the burglary with Aaron Robison. (*Id.* at 18:6-7.) As a result of the charges, Ellis was incarcerated at the Jail from May 2013 to June 2014. (*Id.* at 22:1-3; Ellis Aff. ¶ 2, ECF No. 30-9.) Robison was also incarcerated at the Jail for a period of time, but was housed in a different cell block. (Ellis Aff. ¶ 3, ECF No. 30-9.) Ellis maintains that the Jail had a policy of housing codefendants in separate cell blocks, (*Id.* at ¶ 4; Ellis Dep. 59:1—60:20), but Defendants deny such a policy existed. (Defs.' Br. at 6, ECF No. 23.)

In June 2014, Ellis pleaded guilty to the burglary charges and was transitioned to the Hancock County Community Corrections detention facility (the "Facility") to begin a work release program. (Ellis Dep. 20:14-20; 22:8-20.) In June 2015, while Ellis was still in the Facility, he had an interaction with Robison. (*Id.* at 27:2-10.) Facility staff warned Ellis that Robison was there, knowing that the two were codefendants. (*Id.* at 27:12-13.) Ellis approached Robison and told him that he did not want any problems. (*Id.* at 27:15-19.) For the rest of Ellis's time in the Facility, he and Robison stayed away from each other. (*Id.*) On July 21, 2015, Ellis left the Facility and was transferred to home detention. (*Id.* at 25:9-16.)

Ellis violated his home detention on February 9, 2016, and was taken back to the Facility. (*Id.* at 31:3-21.) The next day, February 10, 2016, he was transferred to the

Jail. (*Id.* at 31:23-24.) When Ellis was booked at the Jail, a staff member helped him fill out an intake form. (*Id.* at 33:7-15.) When asked: "Do you know anyone you cannot be around that's a danger to you or you to them?" Ellis responded "No." (*Id.* at 34:20—35:1.) At the time, On February 10, 2016, Robison was not being held at the Jail, but rather was housed at the Facility. (*Id.* at 57:13-24.) Ellis was aware of this. (*Id.*)

On April 10 or 11, 2016,[1] Robison was booked at the Jail and put in Cell Block B, where Ellis was housed. (Probable Cause Aff., ECF No. 30-8; Incident Rep., ECF No. 30-7.) Ellis was asleep in his cell when Robison entered Cell Block B at 10:43 a.m. (Ellis Dep. 40:15-22; Probable Cause Aff., ECF No. 30-8; Incident Rep., ECF No. 30-7.) At 11:06:00 a.m., Robison entered Ellis's cell. (Probable Cause Aff., ECF No. 30-8; Incident Rep., ECF No. 30-7.) Other inmates in the day room began looking over towards Ellis's cell. (*Id.*) At 11:06:27 a.m., Robison exited Ellis's cell. (*Id.*) At 11:07:09 a.m., Robison again entered Ellis's cell. (*Id.*) At 11:07:37 a.m., Robison exited Ellis's cell and began talking to another inmate in the day room. (*Id.*) At 11:08:07 a.m., Robison entered Ellis's cell for the third time. (*Id.*) At 11:11:37 a.m., Robison exited Ellis's cell and began talking to other inmates in the day room. (*Id.*) At 11:16:12 a.m., Robison entered Ellis's cell for a fourth time. (*Id.*) The inmates in the day room turned to look towards Ellis's cell. (*Id.*) At 11:18:42 a.m., Robison exited Ellis's cell. (*Id.*) At 11:20:59 a.m., Robison entered Ellis's cell for the fifth time and

---

[1] The Probable Cause Affidavit (ECF No. 30-8) lists the date of the incident as April 10, 2016. The Incident Report (ECF No. 30-7), however, states that the attack occurred on April 11, 2016.

4

exited at 11:21:08 a.m. (*Id.*) Robison entered Ellis's cell for a sixth time at 11:24:09 a.m. and exited at 11:24:52 a.m. (*Id.*) Robison entered Ellis's cell for the last time at 11:28:24 a.m. (*Id.*) At 11:29:11 a.m., Robison exited the cell. (*Id.*) At some point when Robison was in Ellis's cell, he attacked Ellis. (Ellis Dep. 41:16-18, ECF No. 22-1.) At 11:39:29 a.m., Ellis came out of his cell complaining of jaw pain and spit blood into the trash can. (Probable Cause Aff., ECF No. 30-8; Incident Rep., ECF No. 30-7.) Ellis suffered a broken jaw as a result of the incident. (*Id.*)

The cameras in the control room were not being monitored during this incident. (Evans Dep. 33:20-23, ECF No. 30-4.) Prison officials reviewed the cameras after the incident to determine what happened. (*Id.* at 10:9-21.)

Throughout Ellis's time in the Jail, from May 2013 to June 2014 and early 2016, inmate-on-inmate violence was a common, weekly occurrence. (Ellis Aff. ¶ 14, ECF No. 30-9.)

## II. Legal Standard

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the district court "must construe all the facts and reasonable inferences in the light most favorable to the nonmoving party." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017).

5

### III. Discussion

*A. Hancock County Council*

Defendants first argue that the Hancock County Council is not a suable entity because "a county is known in law only by the board of commissioners, and acts as a county only through such board." (Defs.' Br., ECF No. 23 at 8.) Ellis does not respond to this argument in his Response Brief (ECF No. 29), nor his Surreply (ECF No. 37). The Seventh Circuit has long held that a litigant waives an argument by failing to make it. *See, e.g.*, *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("failure to respond to an argument . . . results in waiver"); *Wojtas v. Cap. Guardian Tr. Co.*, 477 F.3d 924, 926 (7th Cir. 2007) ("failure to offer any opposition to . . . [the] statute of limitations argument constitute[s] a waiver"); *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001) ("acquiescence operates as a waiver" when a party fails to respond to a dispositive or nonfrivolous argument). Consistent with this authority, the Court interprets Ellis's failure to respond as a waiver of his arguments concerning Defendants' assertion that the Hancock County Council is not a suable entity. Summary judgment is therefore appropriate as to Ellis's claims against Defendant Hancock County Council.

*B. 42 U.S.C. § 1983 Claim*

Ellis alleges that Defendants' widespread practice of understaffing the Jail caused his injuries and violated his Eighth Amendment right to be free from cruel and unusual punishment. A local government entity can be held liable for constitutional violations under 42 U.S.C. § 1983 if the unconstitutional act complained of is caused by:

"(1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978)). A plaintiff must show that the municipality's policymakers were "deliberately indifferent as to [the custom or practice's] known or obvious consequences," *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002), meaning a "reasonable policymaker [would] conclude that the plainly obvious consequences" of the municipality's actions would result in the deprivation of a federally protected right. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 411 (1997).

The Eighth Amendment imposes a duty on prison officials to protect inmates from violence at the hands of other inmates. *Farmer v. Brennan*, 511 U.S. 835, 833 (1994). Prison officials can be held liable for failing to protect an inmate from another only if the official "knows of and disregards an excessive risk to inmate health or safety." *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (quoting *Farmer*, 511 U.S. at 837). The harm suffered by the inmate must be an objectively serious one that was caused by a risk of which the prison officials were actually aware. *Id*.

The evidence submitted permits a reasonable fact finder to conclude that Defendants were aware of, and deliberately indifferent to, the risk that the Jail's understaffing posed to inmates. A reasonable juror could also find that Defendants had a widespread and well-settled practice of understaffing the Jail, which caused Ellis to be attacked and severely injured.

7

The staffing analysis done in 2013 concluded that the lack of officers in the Jail posed a "substantial risk of injury to the current staff and inmate population." (Staffing Analysis, ECF No. 30-1 at 7.) Defendants were aware of this risk, as they were presented with the report, including the findings that eleven more officers needed to be hired, and two officers needed to be stationed in the control room. Defendants deliberately chose not to allocate funding for the additional officer positions every year since 2013, despite knowing that these positions were needed to properly protect their inmate population.

The understaffing of the Jail persisted at least from 2013 to 2018. (Shepherd Dep. 36:15—37:12, ECF No. 30-3.) A reasonable juror could find that this practice of understaffing the Jail was widespread and well-settled. And a genuine issue of material fact exists as to whether this practice caused Ellis's injuries. If two officers were stationed in the control room, as recommended by the staffing analysis, it is possible that one of the officers would have been watching the surveillance video when Ellis was attacked. Although it appears that the attack was a brief hit and run, and perhaps no amount of jail officers in the surveillance room or cell block would have prevented the attack, this is a question of fact for the jury to decide.

Because there are multiple genuine issues of material fact, and because a jury could return a verdict for Ellis on his § 1983 claim, Defendants are not entitled to summary judgment.

*C. Negligence Claim*

Ellis also brings a negligence claim against the Sheriff's Department, alleging that it breached its duty to provide for the safety of its inmates. The parties do not dispute that the Sheriff's Department has a duty to "take care of the county jail and the prisoners there." Ind. Code § 36-2-13-5(a)(7). Ellis argues that the Sheriff's Department breached this duty by failing to adequately staff the Jail despite knowing the risk of injury that the understaffing posed to the inmates. The Sheriff's Department maintains that they did not breach their duty to Ellis because they had no knowledge that Ellis needed to be separated from Robison.

Under Indiana law, the question of breach is "usually a matter left to the trier of fact." *Mangold ex rel. Mangold v. Ind. Dep't of Nat. Res.*, 756 N.E.2d 970, 975 (Ind. 2001) (quoting *Delta Tau Delta, Beta Alpha Chapter v. Johnson*, 712 N.E.2d 968, 974 (Ind. 1999)). Additionally, summary judgment is "rarely appropriate" in negligence actions, because they are particularly fact sensitive and "are governed by a standard of the objective reasonable person—one best applied by a jury after hearing all of the evidence." *Wooten v. Caesars Riverboat Casino, LLC*, 63 N.E.3d 1069, 1073 (Ind. Ct. App. 2016) (quoting *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004)). "Only where the facts are undisputed and lead to but a single inference or conclusion may the court as a matter of law determine whether a breach of duty has occurred." *Mangold*, 756 N.E.2d at 975 (citing *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1372 (Ind. 1992)).

9

The facts here do not lead to the single conclusion that the Sheriff's Department did not breach their duty of care to Ellis. A reasonable juror could find that the Sheriff's Department did not use reasonable care in properly staffing the Jail and ensuring the safety of its inmates. As in most negligence actions, the question of breach in the instant case is fact intensive and must be decided by a jury.

The Sheriff's Department argues that even if it did breach its duty, it is still entitled to summary judgment because Ellis was contributorily negligent by failing to alert the Jail staff that he needed to be separated from Robison. Like the issue of breach, contributory negligence is a question of fact for the jury to decide unless the facts are undisputed and only a single inference can be reasonably drawn from them. *Meadowlark Farms, Inc. v. Warken*, 376 N.E.2d 122, 130 (Ind. Ct. App. 1978). The Sheriff's Department asks the Court to find that, as a matter of law, Ellis was aware of the risk of being attacked by Robison and did not take reasonable care in protecting his own safety. The Court cannot make such a finding. Ellis correctly thought that on the day he was booked into the Jail, Robison was not being held there. He had no reason to fear an attack by Robison at the Jail and a reasonable juror could find that he exercised due care in protecting his safety.

Because material issues of fact exist as to the Sheriff's Department breach of their duty of care and Ellis's own exercise of care, the Sheriff's Department is not entitled to summary judgment on Ellis's negligence claim.

## IV. Conclusion

For the reasons stated above, Defendants' motion for summary judgment (ECF No. 22) is **granted in part** and **denied in part**. Summary judgment is **granted** as to all of Ellis's claims against the Hancock County Council. Summary judgment is **denied** as to Ellis's negligence and *Monell* claims against the Hancock County Sheriff's Office and the Hancock County Board of Commissioners. The parties are encouraged to discuss potential settlement options with the Magistrate Judge prior to the trial.

**SO ORDERED.**

Date: 1/2/2020

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution to all parties of record via CM/ECF.